Champion Insurance Company ("Champion") filed this declaratory judgment action against Thomas M. Wilkins, seeking a declaration that there was no collision coverage on a 1983 Toyota Cressida automobile, under a particular insurance policy issued by Champion to Wilkins, when the Toyota sustained approximately $10,500 in damage as a result of a collision.
The trial court heard ore tenus evidence and made the following findings of fact, which are not plainly or palpably erroneous:
"1. . . . .
 "2. Wilkins bought a 1984 Ford automobile on July 30, 1986.
 "3. The bill of sale was signed by Wilkins individually.
 "4. The bill of sale was issued to Wilkins Auto Sales.
". . . . *Page 966 
 "6. Wilkins Auto Sales is not a partnership or corporation.
 "7. Wilkins purchased a policy of insurance . . . from Champion to cover the Ford automobile effective August 1, 1986.
 "8. Wilkins paid and Champion accepted the premium payments when they were due.
 "9. The parties [Wilkins and the Champion agent from whom he purchased the policy] discussed Wilkins' plan to purchase another automobile in the very near future.
 "10. On August 20, 1986 [21 days later], Wilkins purchased a 1983 Toyota automobile from the same seller as before [i.e., from the seller of the Ford].
 "11. The bills of sale for the two automobiles are identical.
"12. The 'named owners' are identical.
 "13. The 1983 Toyota was damaged by a collision with a hit and run driver on August [2]4, 1986.[1]
 "14. Wilkins contacted Champion on August 25, 1986, and related the fact of the purchase of, and the collision damage to, the 1983 Toyota.
 "15. Champion added the Toyota automobile to Wilkins' policy of insurance and quoted the new premium payment.
 "16. Wilkins paid, and Champion accepted, the premium payment.
". . . .
 "19. Champion proceeded to adjust the claim for the 1983 Toyota.
 "20. Champion and Wilkins agreed on a value for the collision damage to the Toyota. . . ."
This amount was not paid. Champion cancelled the coverage on the Toyota, effective October 12, 1986, and filed this action. Champion did not cancel the coverage on the Ford, nor indicate that it intended to cancel it.
In the provision of the insurance policy that provided coverage for collision damage, "Section D — Automobile Physical Damage Insurance," the phrase "covered automobile" was defined:
 "a land motor vehicle . . . which is either (a) designated in the declarations, by description, as a covered automobile to which this insurance applies and is owned by the named insured; or (b) if not so designated, such vehicle is newly acquired by the named insured during the policy period provided, however, that: (i) it replaces a described covered automobile, or as of the date of its delivery this insurance applies to all covered automobiles, and (ii) the named insured notifies the company within 30 days following such delivery date; but 'covered automobile' does not include a vehicle owned by or registered in the name of any individual partner or executive officer of the named insured unless specifically stated otherwise by endorsement forming a part of the policy; . . . ."
The 1983 Toyota, at the time it was damaged by a collision, was not designated in the declarations, by description, as a covered automobile. However, the 1983 Toyota had been newly acquired during the policy period by the same entity and from the same entity as the vehicle designated in the declarations, by description.
Wilkins, the insured, notified Champion within 30 days following the purchase and delivery of the Toyota. The Toyota was purchased and delivered on August 20, 1986. Champion was notified, and it added the Toyota to the policy (albeit one day after the collision) on August 25, 1986. It was then designated in the declarations by description, and a premium was charged and paid.
Therefore, whether this vehicle was insured against collision damage depends upon whether it replaced a described covered automobile (which it clearly did not) or whether, "as of the date of [the Toyota's] delivery, this insurance applied to allcovered automobiles." Champion cannot and does not argue that the collision coverage does not apply to all "coveredautomobiles."
We must enforce unambiguous insurance contracts as they are written, and we cannot *Page 967 
defeat express provisions in a policy by judicial interpretation. Ranger Insurance Co. v. Hartford Steam BoilerInspection Insurance Co., 410 So.2d 40 (Ala. 1982); Butler v.Michigan Mutual Insurance Co., 402 So.2d 949 (Ala. 1981). We must conclude that the Toyota was covered under the provisions of Wilkins's Champion insurance policy, for it had been newly acquired during the policy period by Wilkins, an individual doing business as Wilkins Auto Sales, a sole proprietorship. Wilkins notified Champion of this and added it to the policy within 30 days after the Toyota was delivered to him.
Champion suggests that we look to the definition of "owned automobile" under the liability provisions of the policy to aid in our interpretation of this policy. Under the liability provisions of the policy, for a newly acquired automobile to become an "owned automobile," Champion must insure all automobiles owned by the named insured on the date of the acquisition of the newly acquired automobile. Champion did not insure all automobiles owned by Wilkins on the date he acquired the Toyota.
Only collision coverage is involved. "Covered automobile" is clearly, even if circularly, defined under the provision involving collision insurance. The only way that definition can be read to favor Champion's position here is to read into it an ambiguity, but doing so would not help Champion, because that ambiguity would then be resolved against Champion; ambiguous language in an insurance contract is construed liberally in favor of the insured and strictly against the insurance company. Ho Brothers Restaurant, Inc. v. Aetna Casualty Surety Co., 492 So.2d 603, 605 (Ala. 1986). Champion may resort to circuity in defining "coverage" under its policies; however, we will not take an unnecessarily circuitous route in interpreting them.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., concur.
[1] The date August 4, 1986, appears in one place in the order. From the evidence and the declaration of relief granted in the trial court's order, it is uncontroverted that the Toyota was damaged on August 24, 1986.