William NECHERO, and Chris Nechero, Plaintiffs,

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, Defendant.

No. 91–231–M Civ.

United States District Court, D. New Mexico.

April 21, 1992.

Stephen T. LeCuyer, Mettler & LeCuyer, Albuquerque, N.M., for plaintiffs.

Charles A. Armgardt, Douglas R. Vadnais, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION AND ORDER

MECHEM, Senior District Judge.

This matter came on for consideration on defendant's Motion for Summary Judgment, filed November 15, 1991, plaintiffs' Motion for Partial Summary Judgment, filed November 13, 1991, and Motions to Strike filed December 19, 1991 and January 13, 1992. Defendant originally sought dismissal on three grounds, first, that all of Mrs. Nechero's health insurance claims have been paid, second, that Mrs. Nechero is not a covered dependent because of her Medicare status, and third, that all of plaintiffs' claims are preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA). Defendant later withdrew the assertion that all claims have been paid, conceding a factual dispute on that issue. Plaintiffs request a summary finding that Mrs. Nechero is a covered dependent on the policy.

Having considered the memoranda of the parties, including the supplemental memoranda on ERISA, and being otherwise fully advised in the premises, I find that defendant's Motion is well taken in part and not well taken in part. I hereby deny defendant's Motion as to the effect of Mrs. Nechero's Medicare status. There are genuine issues of material fact as to the extent of Mrs. Nechero's Medicare eligibility and the date on which the contractual exclusion for an insured who "is or becomes" eligible for Medicare may be invoked. Likewise, plaintiffs' Motion for Partial Summary Judgment is denied. Plaintiffs' December 19, 1991 motion to strike and defendant's January 13, 1992 motion to strike are also denied.

Summary judgment is granted as to the remaining issue, defendant's claim of ERISA preemption. I find that the Necheros' individual conversion policy is part of

an employee welfare benefit plan governed by ERISA. All of plaintiffs' claims relate to the plan and are preempted. However, dismissal of these state claims does not warrant dismissal of the case. Pursuant to Fed.R.Civ.P. 15(a), plaintiffs are hereby given ten (10) days from the filing of this order to amend their complaint to frame their cause of action under the civil enforcement provisions of ERISA.

I have also given further consideration to plaintiffs' entitlement to trial by jury. plaintiffs filed a jury demand in this case. Despite the clear weight of authority against allowing jury trial in ERISA matters, I am cognizant that the Tenth Circuit has not directly addressed this issue and that the Supreme Court takes a broad view of the power of the federal courts to award legal, as well as equitable, relief under ERISA. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 486, 112 L.Ed.2d 474 (1990); *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990) (reversing, on other grounds, ERISA action where ADEA and ERISA claims were tried jointly before a jury but where trial court reversed for itself decision on the ERISA claims); *see also Steeples v. Time Ins. Co.*, 139 F.R.D. 688 (N.D.Okla.1991) (jury trial granted in ERISA action for failure to pay medical benefits).

Plaintiffs are hereby directed to brief this issue within ten (10) days of the filing of this order. Defendant is hereby given ten (10) days from the filing of plaintiffs' amended complaint to file a responsive brief on the entitlement to a jury trial in this case.

## BACKGROUND

Plaintiffs William and Christine Nechero, residents of McKinley County, New Mexico, brought suit in state court alleging that defendant failed to pay health insurance benefits. Defendant Provident Life & Accident Insurance Company (Provident), a Tennessee corporation with its principal place of business in Chattanooga, Tennessee, removed this action to federal court, asserting both diversity jurisdiction and federal question jurisdiction under ERISA.

William Nechero was employed by the United New Mexico Financial Corporation (UNMFC) until November 14, 1988. As an employee, he and his wife Christine participated in UNMFC's group health benefits plan provided by Provident. When Mr. Nechero's employment ended, he elected to extend the coverage under an option mandated by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). *See* 29 U.S.C. § 1162; 26 U.S.C. § 4980B(f). At the expiration of this continuation coverage, Mr. Nechero elected to convert the group policy to an individual policy, an option which is also protected by federal law. *See* 29 U.S.C. § 1162(5); 26 U.S.C. § 4980B(f)(2)(E).

The Necheros contracted directly with Provident for this conversion coverage, paying their premiums directly to Provident. Provident contends that UNMFC paid an initial sum for the Necheros' conversion coverage. In addition, because they were converting from a group plan, the Necheros did not have to provide proof of insurability or have a medical examination and were not subject to any exclusion for pre-existing medical conditions.

The individual conversion policy became effective on July 1, 1990. Since then, Mrs. Nechero has required extensive medical treatment. Plaintiffs claim that Provident failed to pay benefits due Mrs. Nechero under this policy. Plaintiffs allege breach of contract, breach of the covenant of good faith and fair dealing, infliction of emotional distress, violation of the New Mexico Unfair Practices and Unfair Insurance Practices Acts, and unreasonable delay in paying claims.

## DISCUSSION

A motion for summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In this case, defendant bears the burden to prove the

absence of a fact issue for trial. *See id.* at 157, 90 S.Ct. at 1608. This burden may be discharged by showing that there is an absence of evidence to support plaintiffs' case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ If so, the court must consider the standard of proof in the case and decide whether the evidence is sufficient for a reasonable trier of fact to find for plaintiffs on the issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere "scintilla" of evidence in plaintiffs' favor is not sufficient to withstand the motion. *See id.* at 251, 106 S.Ct. at 2511. Thus, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–252, 106 S.Ct. at 2512. The facts must be construed in plaintiffs' favor, and the court must draw all inferences in favor of finding triable issues. *See Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1377 (10th Cir.1980).

Defendant seeks a summary finding that all of plaintiffs' claims are preempted by ERISA. To prevail, defendant bears the burden to show as a matter of law that ERISA governs this policy and preempts these claims.

## I. Whether ERISA governs this policy

"Congress enacted ERISA to protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982) (citing H.R.Rep. No. 93–533, 93d Cong.2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad. News 4639.). ERISA imposes nation-wide standards of conduct, reporting and disclosure for employee benefit plans. *See* 29 U.S.C. § 1001(b). ERISA also mandates "ready access to the Federal courts", preempting state causes of action to provide federal remedies as well as uniform administrative practices. 29 U.S.C. § 1001(b); *Fort Halifax Packing Co., Inc.*

*v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ ERISA does not govern every employee benefit, nor every health insurance policy. First, ERISA applies only to benefit *plans,* not all employee benefits. *See Fort Halifax, supra* 482 U.S. at 7–8, 19, 107 S.Ct. at 2215, 2221. "The argument that ERISA preempts state laws relating to certain employee benefits, rather than to employee benefit *plans,* is refuted by the express language of the statute, the purposes of the preemption provision, and the regulatory focus of ERISA as a whole." *Id.* at 19, 107 S.Ct. at 2221.

■ Second, ERISA does not reach purely individual contracts or purchases of insurance. *See e.g., Taggart Corp. v. Life & Health Benefits Admin., Inc.,* 617 F.2d 1208, 1211 (5th Cir.1980), *cert. denied,* 450 U.S. 1030, 101 S.Ct. 1739, 68 L.Ed.2d 225 (1981) ("ERISA "plans" are broader in concept than pure insurance transactions"). ERISA covers plans established or maintained by an employer or employee organization, not by an individual. *Donovan, supra* at 1373; *see also Jervis v. Elerding,* 504 F.Supp. 606, 608 (C.D.Cal.1980) (contract between employer and individual employee for post-retirement or post-termination in-kind compensation was an employment contract and not an ERISA "plan, fund, or program").

■ ERISA governs employee welfare benefit plans established or maintained by an employer or an employee organization engaged in commerce or in an industry or activity affecting commerce. 29 U.S.C. § 1003(a); *see also Memorial Hosp. System v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240 (5th Cir.1990). The statutory definition of an "employee welfare benefit plan" can be divided into five parts. There must be "(1) a "plan, fund, or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or

vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to participants or their beneficiaries." *Donovan, supra* at 1371 (summarizing 29 U.S.C. § 1002(1)). Participants can include former employees. 29 U.S.C. § 1002(7).

■ Plaintiffs challenge whether their individual conversion health insurance policy is part of a plan established or maintained by UNMFC, Mr. Nechero's former employer. The Necheros contend that this policy represents the bare purchase of insurance by individuals, and that while their federally protected right to convert to an individual policy was a benefit to them arising from Mr. Nechero's employment, it was not part of an employee benefit "plan".

It is undisputed that UNMFC's group health plan, in which the Necheros participated, is governed by ERISA. So, too, is the COBRA continuation coverage obtained by the Necheros after Mr. Nechero's employment ended. The Second Circuit has gone further, holding that the right to receive notice of an option to convert to an individual policy is a right arising from and integrally connected to the group plan and is therefore governed by ERISA. *Howard v. Gleason Corp.*, 901 F.2d 1154 (2nd Cir. 1990). Here, however, the issue is whether the individual policy itself, once conversion has taken place, is part of an ERISA plan.

Defendants cite a single case in which an individual conversion policy was considered part of a group plan and preempted by ERISA. *See Aronowitz v. Provident Life & Casualty Ins. Co.*, No. CV–87–01632–RG, 1988 WL 311024 (C.D.Cal.1988). In that case, the court found simply that since the right to convert to an individual policy was a benefit of the group plan, "[t]he resulting individual policy issued to [Plaintiffs] is thus a benefit of employment covered by ERISA." *Id.* at 4.

A. Existence of a plan

To decide whether a plan exists, "a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Donovan, supra* at 1373; *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir.1988), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989) ("The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person.").

Here, a reasonable person would easily observe that the intended benefits are health insurance and that the intended beneficiaries are UNMFC employees or former employees who choose to invoke their conversion privilege under the group plan. *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 977 (5th Cir.1991). The mechanisms for paying premiums and submitting claims are similarly evident.

A plan is distinguished from a benefit by the need for ongoing administrative activity. *See e.g., Wickman v. Northwestern Nat'l Life Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). "ERISA's pre-emption provision was prompted by recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative schemes." *Fort Halifax, supra* 482 U.S. at 11, 107 S.Ct. at 2217. In *Fort Halifax*, the Supreme Court found that ERISA did not preempt a state law requiring employers to pay a one-time, lump-sum payment to all employees displaced by a plant closing, where the employer did not face the kind of periodic demands which would require the ongoing administrative and financial control of a "plan". *Id.* at 12, 107 S.Ct. at 2218; *but see id.* at 17–18, n. 10, 107 S.Ct. at 2221 n. 10 (lump sum severance benefits can amount to a "plan" when they are paid episodically as each employee leaves) (citing *Holland v. Burlington Industries, Inc.*, 772 F.2d 1140 (4th Cir.1985), *summarily aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986); *Gilbert v. Burlington Industries, Inc.*, 765 F.2d 320 (2nd Cir.

1985), *summarily aff'd*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986)).

Health insurance involves periodic payment of premiums and ongoing processing of claims. A substantial administrative scheme is required. I find that this is a plan, and not merely a benefit.

As plaintiffs point out, these premiums are paid and claims submitted directly to Provident, not to UNMFC. These individual conversion policies can continue indefinitely, long after the insured's employment has ended. Plaintiffs suggest that this conversion policy has some of the attributes of an individual contract, rather than an employer-maintained plan.

B. Established or maintained by the employer

■ To determine whether UNMFC has "established or maintained" this plan, I must examine UNMFC's involvement in the plan. *See Hansen, supra* at 978. The Department of Labor has identified one set of circumstances under which an employer will not be considered to have "established or maintained" an ERISA plan. *See* 29 C.F.R. § 2501.3–1(j). No group or group-type insurance plan will be deemed an employee welfare benefit plan where (1) the employer makes no financial contribution, (2) employee participation is completely voluntary, (3) the employer's function is merely to publicize the plan or pass along the premiums, and (4) the employer does not profit from the plan. *Id.* This regulatory exception applies only when all four elements are met. *See e.g., Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452 (5th Cir.1991); *Holcomb v. Pilot Life Ins. Co.,* 754 F.Supp. 524, 528 (N.D.Miss.1991).

This conversion option is purely voluntary and there is no evidence that UNMFC profits from the plan. The question focuses, then, on UNMFC's financial and administrative role in initiating or implementing the plan.

If employees are free to shop around for health insurance, ERISA will not apply to their health insurance contracts. *Brundage–Peterson v. Compcare Health Services Ins. Corp.,* 877 F.2d 509, 510 (7th Cir. 1989). There is no ERISA preemption when the "purchasing employer neither directly nor indirectly owns, controls, administers or assumes responsibility for the policy or its benefits." *Taggart, supra* at 1211.

However, when the employer pays some or all of the costs of a plan, ERISA governs. *Brundage–Peterson, supra; Kidder v. H & B Marine, Inc.,* 932 F.2d 347 (5th Cir.1991). Even if the employer contributes nothing, ERISA applies if the employer endorses or recommends a plan or aids in its administration beyond simply advertising the plan or passing along premiums. *See e.g., Hansen, supra* at 978; *Kanne, supra* at 493; *Holcomb, supra* at 527.

While plaintiffs concede that Provident charged UNMFC an initial excess morbidity fee for the Necheros' conversion coverage, plaintiffs question whether UNMFC actually paid this fee. It is undisputed that UNMFC is not obliged to contribute regularly toward the premiums, no matter how long the Necheros retain their individual policy with Provident.

Even if UNMFC makes no financial contribution, however, UNMFC performs a significant function in tracking the insurance expiration of departing employees, timely informing them of their conversion option, and assisting in their conversion to an individual policy if they so choose. UNMFC's involvement is ongoing as to its employees as a whole, and requires an administrative scheme. Even as to the Necheros alone, UNMFC's efforts to launch their individual conversion policy can be seen as "establishing" the plan.

Another indicia of an employer-maintained plan is the presence of an "employer-employee-plan" relationship. *See Memorial, supra* at 243 (purchase of group insurance policy revealed a "employer-employee-plan relationship"); *Donovan, supra* at 1371 ("The gist of ERISA's definitions ... is that a plan, fund, or program falls within the ambit of ERISA only if the plan, fund, or program covers ERISA participants *because of* their employee status in an employment relationship....") (emphasis added). Here, the Necheros qualified for conversion coverage because of their participation in UNMFC's group plan.

As a result of Mr. Nechero's employment at UNMFC, they were able to obtain continued health insurance coverage without being subjected to a medical exam or an exclusion for pre-existing medical conditions.

Finally, even purely individual benefits or contracts can be governed by ERISA if they are entangled with or integrally connected to an ERISA plan. *See Silverman v. Barbizon School of Modeling & Fashion, Inc.*, 720 F.Supp. 966, 972 (S.D.Fla. 1989). In *Silverman*, the parties memorialized some of the terms of plaintiff's employment in an agreement separate from the documents describing the business' pension and profit sharing plans. The court found, however, that since the agreement was integrally connected to the pension and profit sharing plans and was *derived from* the plans, the agreement, too, was governed by ERISA. *Id.* In *Howard*, the court asked whether the right to notice of an individual conversion option was integrally connected to the group insurance plan, and concluded that it was. 901 F.2d at 1157.

I find that the Necheros' conversion policy arose from Mr. Nechero's employment relationship with UNMFC, was implemented with administrative assistance from UNMFC, and was integrally connected to the group plan in which the Necheros participated when Mr. Nechero was an active employee with UNMFC. Consequently, I find that ERISA governs this policy as a matter of law.

## II. Whether ERISA preempts these claims

■ In ERISA, Congress established a comprehensive scheme placing the regulation of employee benefit plans exclusively in federal hands. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), (quoting Representative Dent's assertion that ERISA's "crowning achievement" was the "reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans"). The statute explicitly provides that it "shall supersede any and all State laws insofar as they may now or hereafter related to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA preemption is sweeping and "conspicuous for its breadth." *Nat'l Elevator Industry, Inc. v. Calhoon*, 957 F.2d 1555 (10th Cir.1992) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990)).

■ State laws which affect plans in only a "tenuous, remote, or peripheral" manner will not be preempted. *Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma, Inc.*, 944 F.2d 752, 754 (10th Cir.1991) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100, n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)). Nor will statutes which do not infringe upon ERISA's regulatory purpose. *Fort Halifax, supra* 482 U.S. at 15, 107 S.Ct. at 2219. In *Fort Halifax*, the Supreme Court also cautioned that "ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'" *Id.* at 19, 107 S.Ct. at 2221 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 522, 101 S.Ct. 1895, 1905 68 L.Ed.2d 402 (1981)). Congress expressly reserved to the states the authority to regulate the insurance, banking and securities industries, and the courts must distinguish such regulatory statutes from state laws "related to" benefit plans. *See* 29 U.S.C. §§ 1144(b)(2)(A), (b)(2)(B).

It is clear, however, that state common law tort and breach of contract actions are preempted. *Pilot Life, supra; Straub v. Western Union Telegraph Co.*, 851 F.2d 1262 (10th Cir.1988). Torts involving improper processing or delay in paying insurance claims are preempted. *Kanne, supra* at 493. So too are bad faith insurance claims and claims for mental anguish or emotional distress. *See Carland v. Metropolitan Life Ins. Co.*, 935 F.2d 1114, 1119 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991); *Brock v. Primedica, Inc.*, 904 F.2d 295, 297 (5th Cir.1990); *Cote v. Durham Life Ins. Co.*, 754 F.Supp. 18 (D.Conn.1991). State statutes imposing duties on insurers are

also preempted when the duties relate to employee benefit plans and would otherwise infringe on ERISA's civil enforcement provisions. *See e.g., Cote, supra* at 22 (statutory claims under the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act preempted); *Roberson v. Equitable Life Assur. Soc. of U.S.*, 661 F.Supp. 416 (C.D.Cal.1987), *aff'd*, 869 F.2d 1498 (9th Cir.1989) (despite regulatory nature of statute, claim under California Unfair Practices Act preempted for infringing on ERISA's remedial scheme).

 In sum, state law claims are preempted by ERISA when (1) they address an area of exclusive federal concern, like the right to receive benefits under an ERISA plan, and (2) they go directly to the relationships among traditional ERISA entities like employers, plans, plan participants and beneficiaries. *See Memorial Hospital, supra* at 245.

The Necheros charge breach of contract, bad faith, infliction of emotional distress, unreasonable delay, and violations of the New Mexico Unfair Practices and Unfair Insurance Practices Acts. Based on the foregoing analysis, I find that all of these claims are preempted as a matter of law.

### III. Conversion to a federal cause of action

Plaintiffs suggest that preemption does not necessitate dismissal of the action where the pleadings state a cause of action arising under federal law. The Supreme Court has found that ERISA so completely preempts the field of employee benefit plans that a complaint asserting only state causes of action may state a claim arising under federal law for the purpose of finding federal question jurisdiction under ERISA. *See Metropolitan Life, supra; see also Sorosky v. Burroughs Corp.*, 826 F.2d 794, 800 (9th Cir.1987).

In the Tenth Circuit, "[a] state law claim will convert to a federal claim only if the claim is preempted by ERISA and within the scope of ERISA's civil enforcement provisions." *Carland, supra* at 1119. As beneficiaries suing to recover benefits un-

der the terms of an ERISA plan, the Necheros' claim falls within the scope of ERISA's civil enforcement provisions. *See e.g.*, 29 U.S.C. § 1132.

Therefore, plaintiffs are hereby given ten (10) days from the filing of this order to amend their complaint to expressly frame their cause of action under ERISA. Plaintiffs are also given ten (10) days from the filing of this order to brief the issue of their entitlement to trial by jury under ERISA, and defendant may respond within ten (10) days of the filing of plaintiffs' amended complaint.

IT IS SO ORDERED.